IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALVIN CURRY,                          )
    Plaintiff,                    )
                                  )
            v.                          )          Civil Action No.  3:16cv824 (MHL)
                                  )
TRANS UNION, LLC, *et al.*,            )
    Defendants.                   )
_____)

**REPORT & RECOMMENDATION**
**On Defendant Greystar Real Estate Partners, LLC's Motion to Dismiss or Transfer &**
**Defendant I.Q. Data International, Inc.'s Motion to Transfer Venue**

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and

Recommendation on Defendant Greystar Real Estate Partners, LLC's Motion to Dismiss for Lack

of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer Venue

("Motion to Dismiss or Transfer") (ECF No. 22) and Defendant I.Q. Data International, Inc.'s

Motion to Transfer Venue ("Motion to Transfer") (ECF No. 35).  (Orders Referring Motions,

ECF Nos. 34, 37.)  The action primarily arises from Plaintiff Alvin Curry's termination of a

residential lease of property located in the state of Washington and Defendants Greystar Real

Estate Partners, LLC ("Greystar")'s and I.Q. Data International, Inc. ("I.Q. Data")'s alleged

attempts to collect rents from Plaintiff thereafter.

       The first issue before the Court is whether it has personal jurisdiction over Defendant

Greystar.  Stemming from this issue is the related question of whether the Eastern District of

Virginia is the proper venue for this action.  Greystar asserts that it has no contacts with Virginia

sufficient to give rise to personal jurisdiction in this action, and further that, since there is no

personal jurisdiction over Greystar in Virginia and the acts and omissions complained of did not

occur in Virginia, venue in this District is improper. I.Q. Data argues that, assuming *arguendo* that venue *is* proper in the Eastern District of Virginia, the Court should nevertheless transfer the action to the United States District Court for the Western District of Washington for the convenience of the parties and witnesses and the interests of justice.

Plaintiff argues that Greystar does have sufficient contacts with Virginia to support personal jurisdiction in this action and Greystar's Motion to Dismiss should be denied. In the alternative, Plaintiff requests that the Court deny Greystar's Motion without prejudice so that Plaintiff may conduct certain jurisdictional discovery to properly combat Greystar's jurisdictional challenge. Regarding I.Q. Data's Motion to Transfer, Plaintiff argues that 28 U.S.C. § 1391(b) supports venue in the Eastern District of Virginia and not in the Western District of Washington. Plaintiff further argues that neither the interests of justice nor the convenience of the parties compels such a transfer, and therefore Plaintiff's choice of venue should be afforded the substantial weight it is due.

Having considered the parties' pleadings and proffers, and for the reasons discussed below, the Court finds that there is no basis for personal jurisdiction over Defendant Greystar in this case. The Court additionally finds that jurisdictional discovery would not give rise to any more useful information or otherwise enable Plaintiff to establish some ground for this Court's assertion of jurisdiction over Greystar, and therefore such discovery is unnecessary. Finally, the Court finds that venue is more appropriate in the Western District of Washington and that transfer to that District serves the interests of justice and the judicial economy. Accordingly, the Court RECOMMENDS that Defendant Greystar's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer Venue (ECF No. 22) be GRANTED IN PART and DENIED IN PART, that Defendant I.Q. Data's Motion to Transfer

2

Venue (ECF No. 35) be GRANTED, and that the action be TRANSFERRED to the Western District of Washington.

## I. BACKGROUND

On or about July 20, 2010, Plaintiff entered into a lease for the rental of an apartment in Lakewood, Washington (the "Lakewood Lease"). (Compl. ¶ 10, ECF No. 1.) During the timeframe implicated by this lawsuit, the apartment was owned by Lakewood Project, LLC[1] and managed by Riverstone Residential West, LLC ("Riverstone West"). (Mem. Supp. Greystar Mot. Dismiss or Transfer ("Greystar Mem. Supp.") Exs. 1, 2, ECF No. 24.) In 2014, following Defendant Greystar's acquisition of Riverstone West's parent company, Riverstone West became Greystar RS West, LLC, a subsidiary of Greystar. (Greystar Mem. Supp. 1; Aff. Matthew White 2, ECF No. 33-1.)

At the time Plaintiff entered into the Lakewood Lease in 2010 he was an active duty "servicemember" as defined by the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901, *et seq.*, and he maintained this status until April 22, 2015. (Compl. ¶¶ 11–12, 54.) On or about August 30, 2010, Plaintiff received military orders for a permanent change of station ("PCS") to Ft. Eustis, Virginia,[2] effective December 10, 2010. (*Id.* ¶ 13; Pl. Mem. Opp. I.Q. Data's Mot. Transfer ("Pl. Mem. Opp. Transfer") 2, ECF No. 38.) Accordingly, on or about September 21, 2010, Plaintiff provided written notice to Greystar[3] conveying his desire to

---

[1] Plaintiff alleges that the apartment was owned by Greystar. Compl. ¶ 10. However, Greystar has provided evidence showing that its only tie to the property is through the then-managing company. *See* White Aff. 1–2, ECF No. 33-1.

[2] There is some confusion in the briefs regarding the state to which Plaintiff moved after receiving his PCS orders. (*See* Pl. Mem. Opp. Greystar Mot. Dismiss or Transfer ("Pl. Opp. Mot. Dismiss") 2, ECF No. 32 (describing transfer to Georgia); Reply Br. Supp. Greystar Mot. Dismiss or Transfer ("Greystar Reply") 7, ECF No. 33 (repeating Plaintiff's "allegation" of transfer to Georgia).) However, Plaintiff has provided a copy of his orders (*see* Pl. Mem. Opp. Transfer, Ex. A), which clearly show that Plaintiff was being reassigned to Virginia.

[3] Although Plaintiff actually provided this notice to Riverstone Residential West, LLC, the then-managing company for his apartment, Plaintiff's Complaint consistently refers to the managing entity as Greystar because of Greystar's subsequent acquisition of Riverstone Residential West, LLC's parent company. For the sake of consistency and

terminate his lease and including a copy of his PCS orders, pursuant to the SCRA. (Compl. ¶¶ 14, 57.) Plaintiff alleges that, notwithstanding this notice, Greystar billed Plaintiff for rents he was not obligated to pay and subsequently hired I.Q. Data to initiate collection activities against Plaintiff, all in violation of the SCRA. (*Id.* ¶¶ 16, 58.) Plaintiff further alleges that I.Q. Data wrongfully reported a debt to consumer reporting agencies on account of the unpaid rents, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, and otherwise engaged in practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.* (*Id.* ¶¶ 16, 42–52.) As a result of the foregoing, Plaintiff claims damages in the form of lost employment, lost credit opportunities, harm to credit reputation and score, and emotional distress. (*Id.* ¶ 17.)

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Complaint (ECF No. 1) in this Court on October 7, 2016. On December 6, 2016, after obtaining an extension from Judge Lauck, Greystar filed the instant Motion to Dismiss or Transfer and Memorandum in Support (ECF Nos. 22, 24), as well as its Answer to the Complaint (ECF No. 25). After receiving his own filing extension, Plaintiff filed a Memorandum in Opposition to Greystar's Motion to Dismiss or Transfer (ECF No. 32) on December 27, 2016. Greystar filed its Reply to Plaintiff's Memorandum in Opposition (ECF No. 33) on December 30, 2016.

On January 18, 2017, Judge Lauck referred Greystar's Motion to Dismiss to the undersigned for Report and Recommendation. (Order Referring Motion, ECF No. 34.) Then, on February 24, 2017, I.Q. Data filed its own Motion to Transfer and a Memorandum in Support thereof (ECF Nos. 35, 36), which Judge Lauck similarly referred to the undersigned for Report

_____

because doing so has no impact upon the analysis of this Report and Recommendation, the Court will adopt Plaintiff's language and refer to the then-managing entity as "Greystar."

4

and Recommendation. (Order Referring Motion, ECF No. 37.) On March 7, 2017, Plaintiff filed his Memorandum in Opposition to Transfer (ECF No. 38). I.Q. Data did not file a reply.

In order to properly address an issue raised in Plaintiff's Memorandum in Opposition to Transfer, on March 22, 2017, the undersigned ordered Defendants Experian Information Solutions, LLC ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union") (collectively, "the CRA Defendants") to file supplemental briefing on the question of whether the CRA Defendants would be subject to personal jurisdiction in the Western District of Washington, were the present action to be transferred there. (Order Req'g Suppl. Briefing, ECF No. 39.) On March 31, 2017, Trans Union filed its supplemental brief (ECF No. 40), and on April 3, 2017, Experian filed its supplemental brief (ECF No. 41). Equifax has not filed anything in response to the Court's Order. Additionally, Plaintiff has declined to submit any responsive brief on the issue. The Court dispenses with oral argument on this and all other issues; despite certain parties' lack of response, the Court finds that the facts and legal contentions are adequately presented in the materials before the Court and that oral argument will not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). The time for any further briefing on the instant matters having passed, the motions are now ripe for review.

## III. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

A defendant may raise lack of personal jurisdiction as a defense in a pre-answer motion. *See* Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving . . . the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676

(4th Cir. 1989). However, when the court "addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* (quoting *Combs*, 886 F.2d at 676) (further citing *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 628 (4th Cir. 1997)). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

That being said, courts "are not required . . . to look solely to the plaintiff's proof in drawing [jurisdictional] inferences;" courts may consider a defendant's proffered proof, such as affidavits. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993); *see also Long v. Chevron Corp.*, 2011 U.S. Dist. LEXIS 99513, at *10 (E.D. Va. Sept. 2, 2011); *PBM Prods. v. Mead Johnson Nutrition Co.*, 2009 U.S. Dist. LEXIS 93312, at *4 (E.D. Va. Sept. 28, 2009). Courts are nevertheless required to measure such proof against the plaintiff's assertions, taken in their "most credible light," *Mylan*, 2 F.3d at 62, and to "give [p]laintiff the benefit of any favorable inferences supported by the record." *PBM Prods.*, 2009 U.S. Dist. LEXIS 93312, at *4. "Although the standard may be forgiving, neither blanket conclusory allegations . . . nor simply showing a parent-subsidiary relationship can support jurisdiction." *Id.* at *4–*5 (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005); *Sterne v. Thompson*, 2005 WL 2563179, at *4 (E.D. Va. Oct. 7, 2005)).

**B. Motions to Transfer Venue**

"Under 28 U.S.C. § 1406(a), 'the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer

such a case to any district or division in which it could have been brought.'" *Saudi*, 427 F.3d at 277. "Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum." *Id.* (citing *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255–56 (4th Cir. 2002)). Alternatively, under 28 U.S.C. § 1404(a), a district court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."

## IV. DISCUSSION

The first issue before this Court is whether the Court may exercise personal jurisdiction over Defendant Greystar. The second issue is whether the Court should transfer the action—regardless of the outcome of the Greystar-jurisdiction analysis—for the convenience of the parties and witnesses and the interest of justice. Defendant Greystar challenges this Court's exercise of personal jurisdiction and, joined by Defendant I.Q. Data, challenges the propriety of venue in this District. Plaintiff argues that personal jurisdiction over Greystar and venue are both proper in the Eastern District of Virginia, and that the convenience of parties and witnesses and the interest of justice do not support transfer to the Western District of Washington. Plaintiff tangentially seeks leave to conduct jurisdictional discovery to bolster his argument that the Court may exercise personal jurisdiction over Greystar; Greystar argues that such discovery is unnecessary as well as unwarranted as a matter of law.

### A. Personal Jurisdiction

Determining whether a federal court may exercise personal jurisdiction over a non-resident defendant[4] requires a two-step analysis, which asks: (1) whether the forum state's long-

---

[4] Although Plaintiff never sets forth Greystar's state-citizenship in the Complaint, the Court has determined that Greystar is not a resident of Virginia. As an LLC, Greystar is a resident of all states of which its members are

arm statute authorizes the exercise of jurisdiction; and (2) if so, whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc. (In re Carefirst of Md., Inc.)*, 334 F.3d 390, 396 (4th Cir. 2003); *People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*, 922 F. Supp. 2d 536, 542 (E.D. Va. 2013). Considering step one, Virginia's long-arm statute authorizes personal jurisdiction to the fullest extent permissible under the due process clause. *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999). Accordingly, for courts applying Virginia law, "the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

At step two, "[t]here are two types of personal jurisdiction that meet the requirements of due process: specific and general." *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 U.S. Dist. LEXIS 145764, at *8 (E.D. Va. Oct. 27, 2015) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985)); *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). "In both instances, a nonresident defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Hovering in the periphery of this analysis is the question of whether the Court should permit Plaintiff to conduct jurisdictional discovery before deciding this issue at all.[5] Such a

---

residents. *See Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *see also Hoffman v. Fairfax Cty. Redev. & Hous. Auth.*, 276 F. Supp. 2d 14, 20 (D.D.C. 2003) ("[A]ll three defendants are subject to personal jurisdiction in Virginia given that defendants Fairfax County and FCRHA reside in that forum and defendant Quantum is an LLC with members residing there." (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 190 (1990)). Greystar is composed of seven members, all of whom are natural persons and none of whom reside in Virginia. (Askins Aff. 1, ECF No. 33-2.)

[5] Plaintiff seeks to conduct jurisdictional discovery on the following subjects: (1) Greystar's acquisition of Riverstone Group; (2) Greystar's business structure and the organization of its subsidiaries; (3) identification of alleged subsidiaries of Greystar operating in Virginia and/or Washington; (4) the business operations of the Greystar

decision is "committed to the sound discretion of the district court." *Base Metal Trading v. Ojsc Novokuznetsy Aluminum Factory*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). Moreover, when a court finds "no reason to believe that the additional information [sought] would . . . alter the analysis of personal jurisdiction, the court [is] within its discretion in deciding that [a party] ha[s] failed to establish that jurisdictional discovery [is] warranted." *Carefirst*, 334 F.3d at 403 (internal quotations and original alterations omitted).

Ultimately, the Court finds that it cannot assert personal jurisdiction over Defendant Greystar under either theory of personal jurisdiction and that additional jurisdictional discovery would not alter this analysis.

### 1. Greystar's Contacts with Virginia & Plaintiff's Request for Jurisdictional Discovery

Plaintiff argues that Greystar has "substantial" contacts with Virginia, "including management of over 20 different apartment complexes . . . as well as business offices physically located in McLean, Virginia." (Pl. Opp. Mot. Dismiss 3.) Plaintiff asserts that "[t]his evidence patently supports that Greystar is subject to personal jurisdiction in Virginia by and through its physical presence and ongoing conduct of business in the Commonwealth." (*Id.*) In contrast, Greystar argues that these business operations and offices are actually the work and responsibility of a subsidiary, and that Greystar itself does not transact any business in the Commonwealth. (Greystar Mem. Supp. 4.) Greystar cites the U.S. Supreme Court case *Cannon Mfg. Co. v. Cudahy Packing Co.* for the assertion that "the mere existence of a parent-subsidiary relationship does not conclusively indicate that a parent is within a court's jurisdiction by way of a subsidiary's in-state activities." (*Id.*, citing generally *Cannon*, 267 U.S. 333 (1925).) Instead, for

---

subsidiaries in Virginia and/or Washington; and (5) Greystar's control, management, interaction and involvement with its subsidiaries in Virginia and/or Washington. Although it does not base its decision regarding jurisdictional discovery on this fact, the Court notes that Defendant Greystar appears to have addressed all of these subjects in the affidavits attached to its Reply Brief. (*See* Aff's, ECF Nos. 33-1, 33-2.)

a subsidiary's actions to be imputed to the parent entity, a plaintiff must show that the parent uses the subsidiary as its alter ego or that the subsidiary is an implied agent of the parent. *Colt Def. LLC v. Heckler & Koch Def., Inc.*, 2004 U.S. Dist. LEXIS 28690, at *52 (E.D. Va. Oct. 22, 2004); *see also A.H. Robins, Inc. v. Zoo-Techniques, S.A.R.I.*, 1979 U.S. Dist. LEXIS 13634, at *9 (E.D. Va. Mar. 21, 1979).

Plaintiff challenges the assertion that Greystar does not itself transact business in Virginia as "unsupported" and alternatively requests leave to engage in jurisdictional discovery to plumb the depths of this claimed parent-subsidiary relationship. However, Greystar has already supported its position with affidavits describing the region-specific operations of its subsidiaries, Greystar's lack of management and involvement with those regional subsidiaries, and the fact that Greystar itself is not registered to do business in Virginia. (ECF Nos. 33-1, 33-2.) Fortunately, the Court need not engage in analyzing Greystar's parent-subsidiary relationship, and it similarly need not grant Plaintiff's request to engage in jurisdictional discovery, because neither would alter the Court's ultimate analysis of personal jurisdiction. *See Carefirst*, 334 F.3d at 403.

"At [this] early stage of a motion to dismiss, and in the absence of an evidentiary hearing, . . . . [t]he court must construe all relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences in favor of jurisdiction." *Colt*, 2004 U.S. Dist. LEXIS 28690 at *29 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Accordingly, even granting Plaintiff the benefit of this minimal burden and assuming for present purposes that Greystar's subsidiary's activities in Virginia could be attributed to Greystar itself (the aim of Plaintiff's requested jurisdictional discovery), the Court finds that the presence of a few offices and the management of twenty apartment complexes does not amount to sufficient "minimum contacts"

with Virginia to render Greystar subject to personal jurisdiction in this action, for the reasons discussed below.

## 2. Specific Jurisdiction

"A court may exercise specific jurisdiction 'when the cause of action arises out of the defendant's contacts with the forum.'" *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (quoting *Base Metal Trading*, 283 F.3d 208, 213 (4th Cir. 2002)). More precisely, to determine whether the exercise of specific jurisdiction is appropriate, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 397. Plaintiff fails to allege facts to support the exercise of specific jurisdiction over Defendant Greystar.

As discussed above, Plaintiff alleges that Greystar has at least one office in Virginia and that it engages in managing several apartment complexes. While such facts would certainly indicate that Greystar "has purposefully availed itself of the privilege of conducting activities in th[is] state," they would still not support the assertion of specific jurisdiction in this action because Plaintiff's claims do not "arise out of those activities." *See id.* Rather, Plaintiff's claims arise from Greystar's activities in and contacts with the state of Washington. Plaintiff entered into the disputed lease in Washington, and he mailed his lease-termination notice to Greystar[6] in Washington when he received his PCS orders. Accordingly, Greystar's subsequent failure to

---

[6] As described *supra* note 3, Plaintiff alleges that he mailed his notice of lease termination to "Greystar." However, the events in issue occurred in 2010, some four years before Greystar acquired the managing entity. Thus, Plaintiff actually mailed the notice to Greystar's predecessor-in-interest in Washington, and Greystar's maintenance of offices in Virginia is irrelevant to Plaintiff's claim against Greystar: there is no way that Plaintiff would have mailed the notice to Greystar's Virginia offices, given that the managing entity at the time Plaintiff sought to terminate his lease *was not Greystar*.

11

terminate the lease according to the terms of the SCRA—Plaintiff's sole claim against Greystar (*see* Compl. at 10)—did not arise from any activities purportedly conducted by Greystar in Virginia.

Because Greystar's alleged activities in Virginia did not give rise to Plaintiff's claim against it, and because Plaintiff has not alleged any other contacts between Greystar and Virginia that plausibly give rise to Plaintiff's claims, the Court cannot assert specific jurisdiction over Greystar in this action.

### 3. General Jurisdiction

For a court to exercise personal jurisdiction over a defendant in an action that does not arise out of that defendant's contacts with the forum state, the defendant must be subject to general jurisdiction in that state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). General jurisdiction is available if the defendant's contacts with the subject forum are "so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Goodyear Dunlop Tires Op's, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, "[t]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) (internal quotation marks omitted).

Again, Plaintiff relies solely on the argument that Greystar has "substantial" contacts with Virginia, "including management of over 20 different apartment complexes . . . as well as business offices physically located in McLean, Virginia." (Pl. Opp. Mot. Dismiss 3.) And again, Plaintiff takes the position that "[t]his evidence patently supports that Greystar is subject to

12

personal jurisdiction in Virginia by and through its physical presence and ongoing conduct of business in the Commonwealth." (*Id.*) The Court disagrees.

The United States Supreme Court in *Daimler AG v. Bauman* reiterated the rule that, "[a]s *International Shoe* itself teaches, a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" 134 S. Ct. 746, 757 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). In *Daimler*, the Supreme Court considered whether the defendant parent corporation could be subject to general jurisdiction in California, assuming that its subsidiary was "at home" for jurisdictional purposes in California and further assuming that the subsidiary's contacts were imputable to the parent. *See id.* at 760. After analyzing the development of general jurisdiction jurisprudence, the Court ultimately found that such an assertion of general jurisdiction would be improper: it rejected the plaintiff's argument that it should "approve the exercise of general jurisdiction in every State in which a corporation [via its subsidiary] engages in a substantial, continuous, and systematic course of business." *Id.* at 760–61. The Court held that such a formulation for general jurisdiction "is unacceptably grasping," given that "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are *so* continuous and systematic *as to render [it] essentially at home* in the forum State." *Id.* at 761 (emphasis added; internal quotation marks omitted). Considering the implications of plaintiff's formulation of general jurisdiction, the Court reasoned that "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them

liable to suit.'" *Daimler*, 134 S.Ct. at 761–62 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The reasoning in *Daimler* is applicable in this case as well. Adopting the same assumptions as did the Supreme Court in *Daimler* and therefore assuming that Greystar's regional subsidiary is "at home" in Virginia and that its actions can be imputed to Greystar, the Court finds that the presence of a few offices and the management of twenty apartment complexes are insufficient contacts to render Greystar "essentially at home" in Virginia. Subjecting Greystar to general jurisdiction in this forum would fly in the face of *Daimler* when Greystar has indeed properly "structure[d] [its] primary conduct" to control "where that conduct will and will not render [it] liable to suit." *Id.*

Greystar is an LLC organized under the laws of another state, none of its members are residents of Virginia, its principle place of business and corporate headquarters are located in another state, it is not registered to do business in Virginia, and it does not own real property or employ any persons in Virginia. (Askins Aff., ECF No. 33-2.) Greystar's overall business "encompasses property management, construction, and principal investment/development in the U.S., Latin America, and Europe." (Greystar Reply 3.) "General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, "at home" would be synonymous with "doing business" tests . . . ." *Daimler*, 134 S.Ct. at 762, n.20. Appraising Greystar's activities in their entirety, then, it is clear that Greystar is not "at home" in Virginia, even with its subsidiary's Virginia contacts imputed to it. Greystar's contacts with Virginia are therefore not of the quality or quantity that would support the exercise of general jurisdiction in this action.

Having found that Plaintiff has failed to make a prima facie showing of sufficient jurisdictional basis for the Court to exercise either specific or general personal jurisdiction over Greystar in this action, the Court turns to the question of whether it should dismiss Greystar from the action or transfer the action in its entirety to the Western District of Washington.

## B. Venue

According to 28 U.S.C. § 1391(b), venue is proper (1) in a district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) in a district where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action. For purposes of determining proper venue, a defendant entity is deemed to reside anywhere that the entity is subject to personal jurisdiction for the action in question. 28 U.S.C. § 1391(c)(2).

Because the Court has determined that Greystar is not subject to personal jurisdiction in Virginia in this action, Greystar does not "reside" in Virginia for purposes of determining venue, and so the Eastern District of Virginia is not a proper venue under 28 U.S.C. § 1391(b)(1). The Court must therefore determine whether Virginia may nevertheless qualify as a proper venue, under either § 1391(b)(2) or (3). If Virginia does not qualify, the Court must analyze transfer under 28 U.S.C. § 1406, which sets forth an "interest of justice" standard. However, if the Court finds that Virginia remains a viable venue for this action, the Court must analyze transfer under 28 U.S.C. § 1404, which grants great deference to Plaintiff's choice of venue. As discussed below, the Court finds that Virginia is not an appropriate venue under any provision of 28 U.S.C.

§ 1391(b), that, instead, the Western District of Washington is the proper venue for this action, and that transfer to the Western District of Washington furthers the interest of justice.

### 1. Virginia is Not an Appropriate Venue

The Court has already determined that Virginia does not qualify as a venue for this action under § 1391(b)(1), because not all defendants are residents of Virginia. Plaintiff argues that Virginia qualifies as a proper venue under § 1391(b)(2), because the substantial part of the events giving rise to Plaintiff's claims occurred in Virginia. (Pl. Mem. Opp. Transfer 6.) The "events" that Plaintiff bases this argument upon are "the offending collection activity and credit reporting activity, which . . . took place entirely while Plaintiff was residing in Virginia." (*Id.*; Pl. Opp. Mot. Dismiss 5.) However, Plaintiff's own words demonstrate the weakness of Plaintiff's argument: simply because an action took place while Plaintiff was located in Virginia does establish that the action itself was conducted in Virginia. Additionally, Plaintiff himself argues that, "[i]n reality, the facts and circumstances giving rise to this lawsuit did not occur at some discrete location . . . . Plaintiff's claims here relate to the collection, credit reporting, sale and investigation of a false and legally impermissible debt from remote locations *in numerous states*." (*Id.* (emphasis added).) As much as Plaintiff argues this refrain against the laying of venue in Washington, the same can be used to argue against the laying of venue in Virginia. Finally, Plaintiff disregards the events giving rise to Plaintiff's claims that occurred in Washington, and which underpin this entire action—namely, Greystar's actions with regard to Plaintiff's lease and Greystar's subsequent retention of a Washington debt collection company—which underpin this entire action. (*See* Greystar Mem. Supp. 5–6.) Based on these considerations, the Court finds that the "substantial part of the events or omissions giving rise to the claim" did not occur in Virginia, and therefore 28 U.S.C. § 1391(b)(2) does not support venue in Virginia.

Finally, venue is not proper in Virginia under the third and final prong of § 1391(b), because, as discussed below, there is another district wherein venue would be proper for this action, and therefore the Court may not rely on the fallback venue provision of § 1391(b)(3).

## 2. The Western District of Washington is an Appropriate Venue

Greystar argues that the Western District of Washington is an appropriate venue for this action because "the majority of events or omissions giving rise to Plaintiff's claims occurred in Washington state[,] not in Virginia." (Greystar Mem. Supp. 6.) Defendant I.Q. Data also argues for transfer to the Western District of Washington, "for the convenience of parties and witnesses[7] and in the interests of justice." (Mem. Supp. Transfer 2.) Plaintiff denies that the Western District of Washington is a proper venue, arguing that Defendants do not all reside in that state and that the substantial part of the events giving rise to Plaintiff's claims occurred in Virginia. (Pl. Mem. Opp. Transfer 6.) The Court has already disposed of Plaintiff's latter argument. The Court further finds that the Western District of Washington qualifies as a proper venue, although for a different reason than those argued by Defendants.

The Western District of Washington qualifies as a proper venue because all Defendants "reside" in Washington for purposes of venue, and because at least one Defendant resides within the Western District, particularly. Greystar resides in Washington because it would be subject to personal jurisdiction on account of its property-management activities in the state, which gave rise to this action. *Carefirst*, 334 F.3d at 397. I.Q. Data resides in Washington—and in the Western District, in particular—because it is a Washington stock corporation with its principal place of business in Everett, Washington, which lies in the Western District. (Mem. Supp. Transfer 2.) *See Goodyear Dunlop Tires Op's, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Finally,

---

[7] An element of transfer under 28 U.S.C. § 1404(a).

the CRA Defendants can all be said to reside in Washington because they are all nationwide reporting agencies that have significant and sufficient contacts with Washington, such that they could reasonably anticipate being haled into court there. (Experian Suppl. Br. 2, ECF No. 41 (citing *World-Wide Volkswagen*, 444 U.S. at 297); Trans Union Suppl. Br., ECF No. 40.) *See also Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006).[8] Therefore, because all Defendants reside in the state of Washington for purposes of venue and at least one Defendant resides in the Western District of Washington, venue in that District is appropriate pursuant to 28 U.S.C. § 1391(b)(1).

### 3. Transfer is Appropriate Pursuant to 28 U.S.C. § 1406(a)

Because the Court has found that venue was improper in Virginia and that an alternative proper venue exists, the Court must analyze Defendants' Motions to Transfer under 28 U.S.C. § 1406(a). Pursuant to that section, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005). This "interest of justice" standard is a different standard than that applied when the district court is facing a motion to transfer from a proper venue, brought under 28 U.S.C. § 1404. Moreover, the Fourth Circuit has recognized that "'the interest of justice' standard provides district courts with broad discretion." *Id.* (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200–01 (4th Cir. 1993)). Section 1406(a) is seen as a tool to enable the adjudication of an action on its merits, where it

---

[8] Although Defendant Equifax ignored the Court's Order to file a brief on the issue of personal jurisdiction in Washington (*see* Order, ECF No. 39), the Court finds that Equifax's position cannot differ materially from that of the other CRA Defendants, given their common business models and practices. The Court takes Equifax's silence on the issue to mean that Equifax has not changed its position since arguing in *Byerson* that, as a nationwide credit reporting agency, it was subject to general jurisdiction based on its widespread credit reporting activities. *See* 467 F. Supp. 2d at 632.

might otherwise be dismissed because of some venue-related obstacle. *Carefirst*, 305 F.3d at 255–56. Based on the circumstances of this case, the Court finds that transfer would indeed serve the interest of justice.

To begin with, dismissal of the action against Greystar would not serve the interest of justice, nor would it serve the interest of judicial economy, because the case would have to be broken into two parts: one, the case against all the remaining Defendants, here in the Eastern District of Virginia, and the other, to be potentially filed in Washington where Greystar is actually subject to personal jurisdiction for the acts complained of in this suit. Plaintiff might even decide that the cost and effort of double litigation is not worthwhile, and thus abandon his effort to adjudicate his SCRA claim against Greystar. In contrast, transferring the action to the Western District of Washington would allow Plaintiff to litigate his claims against all Defendants in one forum, at one time.

Transfer would also serve the interest of justice because litigating the case in the Western District of Washington would enable the parties to engage in more complete discovery and therefore more fully adjudicate the case on the merits. Both Greystar and I.Q. Data raise the issue that the majority, if not all, of their anticipated witnesses reside in Washington and a number are no longer employed by either entity, and therefore any such witnesses are outside of this Court's subpoena power. (Greystar Mem. Supp. 6; Mem. Supp. Transfer 2–3.) The CRA Defendants appear to have no such evidentiary hurdles, in either venue.

Plaintiff argues that the Eastern District of Virginia is Plaintiff's home forum and that it bears substantial relation to the cause of action, and therefore the Court should not transfer the action to the Western District of Washington. (Pl. Opp. Mot. Dismiss 5.) Additionally, Plaintiff argues that his choice of forum is entitled to substantial deference. (Pl. Mem. Opp. Transfer 6.)

Plaintiff's arguments focus on the 28 U.S.C. § 1404 standard for transfer, however, not the § 1406 "interest of justice" standard. Plaintiff's choice of forum is irrelevant to the analysis under § 1406, because the Court has already determined that the Eastern District of Virginia is not an appropriate venue in this action. The Court has also addressed Plaintiff's arguments regarding Virginia's relations to the causes of action in this case, and found that Virginia's interests do not predominate.

Because the Court perceives from Plaintiff's pleadings that Plaintiff would prefer to litigate all of his claims together in one action, and because—in addition to the reasons discussed above—adjudication of a claim is preferable to its dismissal, the Court finds that transfer, rather than dismissal, serves the interest of justice.

## V. CONCLUSION

Having considered the Parties' motions and briefs, and for the reasons discussed above, the Court finds that it lacks personal jurisdiction over Defendant Greystar in this action. The Court additionally finds that, rather than dismissing the Defendant whose actions underpin the entire dispute, the appropriate remedy pursuant to 28 U.S.C. § 1406(a) is to transfer the action as a whole to the Western District of Washington.

Accordingly, the Court RECOMMENDS that Defendant Greystar's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer Venue (ECF No. 22) be DENIED with regard to the Motion to Dismiss and GRANTED with regard the alternative Motion to Transfer, that Defendant I.Q. Data's Motion to Transfer Venue (ECF No. 35) be GRANTED, and that the entire action be TRANSFERRED to the Western District of Washington.

The Clerk is directed to file this Report and Recommendation electronically and send a copy to all counsel of record and to the Honorable M. Hannah Lauck, United States District Judge.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal those findings and conclusions accepted and adopted by the District Judge except upon the grounds of plain error.**

/s/
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: April 26, 2017